**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SEN ZHANG,<br><br>  Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,<br><br>  Defendants. | Case No. 1:24-cv-06834<br><br>Hon. Judge Jeremy C. Daniel<br>Hon. Magistrate Judge Shiela M. Finnegan |

**<u>DEFENDANTS #33 GIBELLE'S AND #47 MITOVILLA'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>**

In accordance with this Court's order dated September 4, 2024 (Dkt. 43), and because Plaintiff Sen Zhang ("Plaintiff") failed to comply with the Federal Rule of Civil Procedure 65(b) or meet the exacting requirements of obtaining preliminary injunction, Defendants #33 Gibelle ("Gibelle") and #47 MitoVilla ("MitoVilla")(collectively, "Defendants"), by and through their counsel, file this opposition and respectfully move this Court to dissolve and vacate the preliminary reliefs granted for Plaintiff and against Defendants, including the preliminary injunction (Dkt. 44) dated September 4, 2024.

## I. BACKGROUND

This action is nothing but a poorly executed scheme to extort and extract quick settlement payments from foreign defendants by abusing the federal judicial process via a sham litigation.

The unfortunate reality is that this judicial district's diligent efforts to protect intellectual property (IP) rights owners against online infringement have been abused to support a mature and lucrative business model of "sealed complaint – *ex parte* TRO (often including complete asset restraint) – quick settlement or default judgment"[1] and lead to a prevalence of the copy-and-paste "Schedule A" actions against foreign (and almost exclusively Chinese)[2] sellers on various ecommerce platforms. For example, Plaintiff's counsel has filed 33 "Schedule A" actions in this district to date, including 21 filed in 2024 alone.

---

[1] In the typical "Schedule A" actions, by the time the defendants are served (which, just like in this case, *see* Fu Decl. at ¶ 35, is almost always within a few days of the preliminary injunction hearing and after the *ex parte* TRO has been granted *and extended*), all odds are already stacked against them. A lot of defendants would choose to settle quickly rather than fighting on the merits even when they have strong defenses, because the complete asset restraint often causes great financial pressure on their normal business operation and cash flow and could potentially lead to the collapse of their entire business. It is also not uncommon for many defendants to settle quickly when the settlement amount is lower than the potential cost of litigating on the merits. Due to the large number of defendants accused in each case, these early and easy settlements alone make the "Schedule A" actions lucrative cash generators for plaintiffs.

[2] "Schedule A" plaintiffs almost never charge any US individuals or entities even when they sell the same or substantial similar products as the foreign defendants, because they are harder to effectuate service and also much more likely to retain counsel to litigate on the merits.

While some of the ever increasing "Schedule A" actions in this district are filed by *legitimate* IP owners seeking relief for *genuine* harms inflicted by *real* online infringers, there is a growing trend of "Schedule A" cases being filed by suspicious actors alleging fictitious injuries based on IP rights of highly questionable validity.³ This action is a glaring example of the latter.

Without any evidence of any legitimate business operation or commercial activity, or even sufficient evidence to establish his standing to sue, Plaintiff initiated this copyright infringement action against 147 defendants, relying on a purportedly copyrighted work (i.e., VA 2-397-511)("Asserted Work") that was *neither* authored *nor* registered by him.

Specifically, the Asserted Work was purportedly⁴ authored by an individual named Pattanawit Chancharastong from Thailand and first published on November 23, 2016. *See* Dkt. 8. However, it was not until June 5, 2024—more than *seven years* after the purported first publication date and exactly *two months* before Plaintiff commenced the present action—when a copyright application for such work was filed with the US copyright office. *Id.* Notably, the application was filed by, and the registration certificate was issued to, "Anoyar Co., Ltd" ("Anoyar"), a *non-party* in this action. *Id.*

Strangely, other than on the copyright certificate (Dkts. 8, 13-1), Anoyar was never mentioned or referenced in any of Plaintiff's filings to date. *See generally* Dkts. 1, 8-15, 21-22, 28-29, 52-53. Google search of "Anoyar Co., Ltd" returns no results. Also, no exact match is found by Google when searching Anoyar's address listed on the copyright certificate, i.e., "Sanderling Cir Unit 46, Las Vegas, NV, 89103, United States," although a *residential* unit at

---

³ Alarmingly, because of the lucrative nature of the "Schedule A" scheme, there are now various agencies in China promoting the "Schedule A" litigation as a business model. In the past week, the undersigned counsel attended an ecommerce exhibition in Shenzhen, China where at least two large non-legal third-party service providers promoted plaintiff-side "Schedule A" litigation as quick money makers.
⁴ As explained in Section II.c.i.1 below, the copyright registration submitted by Plaintiff is **not entitled to any presumption of validity**.

"*4331* Sanderling Cir Unit 46, Las Vegas, NV 89103" appears to be the closest match. More importantly, neither the business search portal provided by the Nevada Secretary of State[5] nor the OpenCorporates database[6] returns any information regarding Anoyar. In short, the claimant of the Asserted Work—Anoyar—appears to be a "ghost" entity that only exists on the copyright certificate but not in the real world.

Plaintiff himself is similarly mysterious. The Complaint merely states that "Plaintiff is a Sole Proprietor in the State of Nevada" (Dkt. 1 at ¶ 6) who "does business in *printing for tourism*" (*id.* at ¶ 3)(emphasis added) without any identifying or contact information other than his name. Plaintiff's declaration adds that he is "the owner of Rainbow Holiday, a Nevada sole proprietorship," Dkt. 13 at ¶ 2, which again omits any identifying or contact information other than his legal name. *See id.* While internet searches of "Sen Zhang" and "Rainbow Holiday" returned *extensive* results, none of them appear to bear any reasonable connection to Plaintiff given the little information known to date. In addition, Rainbow Holiday does not appear to be registered with the State of Nevada, nor is it included in the OpenCorporates database.

Moreover, despite his extensive filings in this action and repeated assertions of extensive and imminent irreparable harm, Plaintiff has submitted *no evidence whatsoever* establishing any legitimate business activities or commercial operations. For example, **Plaintiff has identified no business website, no physical or online store, no branding, no actual product, no sales channel, no product listing, and no advertising or promotion that was or has ever been created or used in the name of either himself or Rainbow Holiday**.

Plaintiff's belatedly submitted "ASSIGNMENT OF COPYRIGHT AND EXCLUSIVE ADMINISTRATIVE RIGHT" (Dkt. 65)("Assignment Agreement") does nothing to dispel the

---

[5] https://esos.nv.gov/EntitySearch/OnlineEntitySearch (last accessed and searched on September 10, 2024).
[6] https://opencorporates.com/ (last accessed and searched on September 10, 2024).

mystery surrounding Anoyar and Plaintiff. Specifically, the Assignment Agreement states that the fee for assignment is merely "One Dollar ($l.00)," identifies Anoyar without any contact information or place of registration or incorporation, and refers to Plaintiff solely by his full name despite it being a widely-used Chinese name. Most notably, the Assignment Agreement was not signed by any officer of Anoyar Co., Ltd nor Plaintiff. Instead, it bears only the signature of Mr. Shengmao Mu as "Attorney On Behalf of Anoyar Co., Ltd," who also happens to be Plaintiff's counsel in this case.

In short, other than disclosing his name in the Complaint, Plaintiff has been essentially litigating anonymously and appears to be nothing more than a "strawman" plaintiff.

Further, while the Complaint alleges that "The Copyrighted Work was licensed and sold through on-line retail channels for *hundreds of thousands of dollars annually*," Dkt. 1 at ¶ 8 (emphasis added), Plaintiff has taken a huge step back in his own declaration. Specifically, Plaintiff now asserts that he has "*authorized stores on the internet* to use the Copyrighted Work in *various product lines* especially for fabrics ("Plaintiff's Products"), which generated *a considerable amount of revenue*." Dkt. 13 at ¶ 8 (emphasis added).

Nevertheless, *absolutely no evidence* was submitted by Plaintiff to support even this substantially watered-down statement. Nor did Plaintiff provide any corroborating details in his motion papers identifying the specific "stores on the internet" that have purportedly received his authorization, the particular "product lines" that have purportedly been authorized, or the exact "amount of revenue" that has purportedly been generated. *See generally* Dkts. 11-13.

In short, Plaintiff, either acting alone or in concert with Anoyar, acquired the Asserted Work with the sole purpose to launch "Schedule A" litigation without any legitimate business operations to support his claim for preliminary injunctive relief.

4

As explained below, Plaintiff's Complaint and his request for *ex parte* TRO and preliminary injunction suffer from significant deficiencies such that the preliminary injunction should not have been entered and ought to be dissolved now.

## II. ANALYSIS

### a. The Preliminary Injunction Should Be Dissolved Due To Plaintiff's Lack Of Standing To Sue.

When the Plaintiff, "is not the author of the copyrighted work," he "must prove a proprietary right through a change of title in order to have standing to sue." *Foamation, Inc. v. Wedeward Enterprises, Inc.*, 970 F. Supp. 676, 683 (E.D. Wis. 1997)(citing *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 483 (1st Cir. 1985)); *see also* 17 U.S.C. § 204(a)("A transfer of copyright ownership, other than by operation of law, is *not valid unless* an instrument of conveyance, or a note or memorandum of the transfer, is *in writing and signed by* the owner of the rights conveyed or such owner's duly authorized agent.")(emphasis added).

Moreover, an issue tied directly to Plaintiff's standing to sue is whether the non-party Anoyar had title to the Asserted Work and the right to register it. *See Foamation*, 970 F. Supp. at 683 (dismissing plaintiff's copyright infringement claim because "[w]ithout title to the copyright, [the plaintiff] could not properly register the copyright"). The copyright certificate indicates that the claimant Anoyar purportedly acquired rights "[b]y written agreement," but no such written agreement has been submitted into the record.

Given that Plaintiff now claims to own the Asserted Work and his counsel Mr. Mu also acted as the correspondent for Anoyar in obtaining the copyright certificate and was the only signer on the Copyright Assignment from Anoyar to Plaintiff, it is usual that the exact agreement by which Anoyar acquired rights from the purported author was neither produced nor referenced anywhere in Plaintiff's filings to date. The absence of this key evidence raises substantial

5

questions about the scope of rights acquired by Anoyar, which directly affects whatever rights could have been assigned to Plaintiff.

In sum, Plaintiff's failure to produce the "written agreement" between Anoyar and the purported author deprived this Court of the factual basis to conclude that he has standing to sue. Additionally, as explained further in Section II.c.i below, Plaintiff also fails to establish the proper authorship and originality of the Asserted Work, which fundamentally undermines Plaintiff's claim of title thus his standing to sue.

As a result, the entire action ought to be dismissed, and the preliminary injunction should be dissolved.

### b. The Preliminary Injunction Should Be Dissolved Because Plaintiff Failed To Comply With Federal Rule Of Civil Procedure 65.

This Court entered the preliminary injunction (Dkt. 44) against Defendants *by converting* the previously entered *ex parte* TRO (Dkt. 18). However, Plaintiff's motion for *ex parte* TRO should not have been granted in the first place because Plaintiff failed to comply with Federal Rule of Civil Procedure 65(b).

Had Plaintiff's motion for *ex parte* TRO been denied as mandated under Rule 65, there would have been no TRO to convert from when Plaintiff filed his motion for preliminary injunction. As a result, Defendants' accounts and assets would not have been restrained while this Court considers this opposition.

Specifically, Federal Rule of Civil Procedure 65(b)(1) provides that:

> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney ***only if***: (A) ***specific facts*** in an affidavit or a verified complaint ***clearly show that immediate and irreparable*** *injury, loss, or damage* will result to the movant before the adverse party can be heard in opposition; ***and*** (B) *the movant's attorney certifies in writing any efforts made to give notice **and** the reasons why it should not be required*.

6

To begin with, no written certification required by Rule 65(b)(1)(B) was ever filed by Plaintiff's counsel. In fact, Plaintiff's counsel at least twice disregarded this requirement, presumably because they have no good faith basis to make such representation to the Court after intentionally concealing this litigation from Defendants for weeks.[7]

Specifically, Plaintiff's *ex parte* motion for temporary restraint order cites Rule 65(b) as providing that "the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Dkt. 12 at pp. 4-5. Yet, Plaintiff turned a blind eye to the clear requirement for written certification *in the exact same section*. Similarly, Plaintiff's *ex parte* motion to extend the TRO cites Rule 65(b)(2), Dkt. 22, a subsection *immediately next* to the requirement of written certification regarding notice. Again, Plaintiff's counsel ignored it.

Because the certification requirement in Rule 65(b)(1)(B) is *mandatory*, Plaintiff's strategic choice of non-compliance doomed his *ex parte* motion for TRO.

Moreover, Plaintiff's *ex parte* motion for TRO should also have been denied for failing to present any "***specific facts*** in an affidavit or a verified complaint ***clearly show that immediate and irreparable injury, loss, or damage*** will result to the movant before the adverse party can be heard in opposition."

Indeed, neither Plaintiff's declaration nor the Complaint contain any non-conclusory factual assertions that could have supported Plaintiff's contention of "immediate and irreparable injury, loss, or damage." At most, Plaintiff's own declaration[8] states:

> 4. I have authorized stores on the internet to use the Copyrighted Work in various product lines especially for fabrics ("Plaintiff's Products"), which generated a considerable amount of revenue.
> . . .

---

[7] Plaintiff did not serve the Defendants until August 30, 2024. Fu Decl. at ¶ 35.
[8] Plaintiff's Complaint was not verified by Plaintiff.

7

> 8. Defendants' unauthorized use of the Copyrighted Work has and continues to irreparably harm me through diminished goodwill and brand confidence, damage to my business reputation, loss of exclusivity, and loss of future sales.
> 9. I have invested substantial time, money, and effort acquiring and promoting the Copyrighted Work.
> 10. The extent of the harm to my business reputation, the goodwill associated therewith, and the possible diversion of customers due to loss in brand confidence are irreparable and incalculable, thus requiring immediate cessation Defendants' copyright infringement.
> 11. I will suffer immediate and irreparable injury, loss, or damage if Defendants' infringement of my Copyrighted Work does not stop immediately.

Dkt. 13. However, paragraphs 4 and 9 are conclusory and not supported by any evidence or corroborating details, whereas paragraphs 8, 10, and 11 are nothing but self-serving legal conclusions disguised as factual declarations.

Notably, among Plaintiff's *extensive* filings to date, *no evidence* was submitted to establish the specific "stores on the internet" that have purportedly received his authorization, the particular "product lines" that have purportedly been authorized, or the exact "amount of revenue" that has purportedly been generated. Nor have any factual details been offered to substantiate the "substantial time, money, and effort acquiring and promoting the Copyrighted Work." In fact, given that the purported assignment from Anoyar to Plaintiff *occurred only three months ago for a single dollar*, the truthfulness of Plaintiff's assertion of "substantial time, money, and effort" is highly questionable.

Moreover, Plaintiff has identified no business website, no physical or online store, no product branding, no sales channel or numbers, no specific products, and no advertising or promotion that was or has ever been created or used by either himself or Rainbow Holiday, let alone anything specifically relating to the Asserted Work.

Additionally, Plaintiff's own declaration also undermines his contention of irreparable harm. Specifically, Plaintiff asserted that he has "*authorized* stores on the internet to use the

8

Copyrighted Work in various product lines especially for fabrics ("Plaintiff's Products"), which *generated a considerable amount of revenue*." Dkt. 13. This shows that adequate remedy at law is readily available even if Plaintiff were to prevail in this action, because any purported harm suffered by Plaintiff could be remedied by awarding *monetary* damages and/or royalties.

At best, Plaintiff merely attempted to allege a "possibility" of irreparable harm. *See* Dkt. 13. However, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008).

In sum, Plaintiff has presented no *specific facts* that "*clearly* show that *immediate and irreparable* injury, loss, or damage" was or would have been caused by Defendants who are not in the same line of business as Plaintiff. *See* Fu Decl. at ¶¶ 3-5.

Thus, because the preliminary injunction was converted from the *ex parte* TRO and Plaintiff's *ex parte* motion for TRO should not have been granted under Rule 65(b), the preliminary injunction should be dissolved.

    **c. The Preliminary Injunction Should Be Dissolved Because Plaintiff Cannot Meet The Legal Requirements For Obtaining Preliminary Injunction.**

A "preliminary injunction is an *extraordinary and drastic* remedy, one that should not be granted *unless the movant, by a clear showing, carries the burden of persuasion*." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)(emphasis added); *see also Winter*, 555 U.S. at 24 ("A preliminary injunction is an extraordinary remedy never awarded as of right."). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

9

"'[P]laintiffs *must* carry the burden of persuasion with respect to the *four prerequisites* of a preliminary injunction,'" and "a plaintiff's filings *must* enable the Court to make the requisite, specific findings." *Ozinga v. United States HHS*, No. 13 C 3292, 2018 U.S. Dist. LEXIS 85387, at *12 (N.D. Ill. May 22, 2018)(quoting *Cox v. City of Chicago*, 868 F.2d 217, 219 (7th Cir. 1989)). "If a plaintiff fails to meet just one of the prerequisites for a preliminary injunction, the injunction must be denied." *Cox*, 868 F.2d at 223.

### i. Plaintiff Is Not Likely To Succeed On The Merits.

#### 1. Plaintiff Is Not Entitled To Any Presumption Of Validity.

"A party is entitled to a presumption of validity *only if* the copyright is registered 'before or within five years after first publication of the work.'" *ABRO Indus. v. 1NEW Trade, Inc.*, No. 3:14-CV-1984-TLS, 2017 U.S. Dist. LEXIS 179792, at *16 (N.D. Ind. Oct. 30, 2017)(emphasis added)(quoting 17 U.S.C. § 410(c)). Because the non-party Anoyar did not register the Asserted Work until more than seven years after its purported first publication, there is no presumption of the "validity of the copyright" nor "of the facts stated in the certificate." *Id.*; 17 U.S.C. § 410(c).

Notably, in *ABRO*, not only did the court reject the statutory presumption, it also refused "to exercise its discretion [under 17 U.S.C. § 410(c)] to grant such a presumption in light of [plaintiff]'s failure to produce any deposit materials that would aid the Court in confirming the scope of the registrations." *ABRO Indus.*, 2017 U.S. Dist. LEXIS 179792 at *16 (citing *Lanard Toys Ltd. v. Novelty, Inc.*, No. CV 05-8406, 2007 WL 2439505, at *6-7 (C.D. Cal. Mar. 17, 2006)(refusing to grant presumption where deposit materials were not produced)).

In this action, Plaintiff has not produced "any deposit materials that would aid the Court in confirming the scope of the registrations." *Id.* ("Nowhere in the record does the Court find a depiction of what ABRO submitted to the Copyright Office or for what subject matter the

10

Copyright Office issued certificates."). For example, Plaintiff has not submitted anything into the record establishing (1) the authorship and originality by the purported author Pattanawit Chancharastong, (2) the first publication date of the Asserted Work, or (3) the "written agreement" between Pattanawit Chancharastong and the non-party Anoyar explicitly referenced in the copyright certificate. *See* Dkt. 8. Thus, similar to *ABRO*, there is no basis for this Court to exercise its discretion under 17 U.S.C. § 410(c) to grant such a presumption to Plaintiff either.

In fact, Plaintiff has implicitly conceded on multiple occasions that no presumption of validity applies in this case. *See generally* Dkts. 12 (no assertion of presumption of validity), 29 (same), 53 (same). Therefore, this Court should not apply any presumption of validity when assessing whether Plaintiff has carried his heavy burden of persuasion.

### 2. Plaintiff Is Not Likely To Succeed On The Merits For Failure To Establish Proper Authorship.

Notably, one group of defendants in this action has presented evidence showing that an individual named Елена Буслаева (machine translation by Google into "Elena Buslaeva") is listed by well-known provider of stock photography, stock footage, stock music, and editing tools—Shutterstock.com ("Shutterstock")—as the author of an identical image, which was also first published on November 23, 2016. *See* Dkt. 50 at 11. As suggested by that group of defendants, it is wholly possible that the purported author Pattanawit Chancharastong from Thailand is a merely a "copier" rather than an "author," especially because a third party in China did appear to have copied the exact image and obtained a copyright registration in January 2022. *See* Dkt. 45 at p. 6, 45-3.

Without the benefit of any presumption of validity or any evidentiary support for the purported authorship and date of first publication, Plaintiff has presented nothing to carry its

11

burden of persuasion that Pattanawit Chancharastong is the *real* author of the Asserted Work, which is a prerequisite for Plaintiff to establish his title thereto and standing to sue.

In sum, Plaintiff cannot establish that he is likely to succeed on the merits in view of the competing authorship identified by other defendants.

### 3. The Asserted Work Is Not Copyrightable And Lacks Originality.

As already explained in detail by other defendants, even if Plaintiff were to prove that Pattanawit Chancharastong is the real author, Plaintiff's claim still fails because the Asserted Work does not contain copyrightable subject matter and lacks the required originality. *See* Dkts. 45 at pp. 3-7, 50 at pp. 2-11. Specifically, without the benefit of any presumption of validity, Plaintiff has failed to show that the Asserted Work is more than a "slavish copy" of an existing piece of marble found in nature.

### 4. Defendants Have Acquired Ongoing Licenses To The Asserted Work Since May 9, 2024 And There Is No Willful Infringement.

On May 9, 2024, both Defendants purchased from Shutterstock an ongoing Enhanced Image License to the purported underlying image in the Asserted Work. *See* Fu Decl. at ¶¶ 19-22.

Among the various usage rights granted, this license specifically authorizes Defendants to use the licensed image by "[i]ncorporat[ing] into merchandise intended for sale or promotional distribution (collectively "Merchandise"), *including, without limitation, textiles*." Fu Decl. at ¶¶ 23-24, Ex. 3 (Section 1.1.a)(emphasis added). Also, because the Enhanced Image License encompasses the benefits "under a Standard Image License, without any limitation on the number of reproductions, impressions, or budget," Defendants also obtained the right to use the licensed image "*[a]s a digital reproduction, including on websites, in online advertising*, in

12

social media, in mobile advertising, mobile "apps", software, e-cards, e-publications (e-books, e-magazines, blogs, etc.), email marketing." *Id.* (emphasis added).

Moreover, the agreement between Shutterstock and any image contributor states that "Licenses issued by Shutterstock for any Content that is later removed from the Shutterstock Websites *will remain in full force and effect in perpetuity*." Fu Decl. at ¶ 25, Ex. 4 (Section 5.c)(emphasis added).

Thus, Defendants' accused products (i.e., shower curtains) and online advertising on Amazon.com (*see* Dkt. 13-2 at #33, #47) all fall squarely into the scope of the Enhanced Image License, which would not be affected by any removal of the underlying image from Shutterstock.

As a result, Defendants' license is a complete bar to any copyright infringement claim by Plaintiff based on activities *on May 9, 2024 and thereafter*. Thus, Plaintiff has no right to restraint Defendants' usage after May 9, 2024, and the preliminary injunction should be dissolved to allow Defendants to enjoy their license rights to the underlying image.

Notably, Plaintiff's assertion of willful infringement against Defendants is without merit and cannot support his claim for treble damages. As early as February 9, 2020, Mr. Fu purchased a Standard Image License from Shutterstock to the underlying image in the Asserted Work, believing in good faith that such license covered subsequent use by Defendants. *See* Fu Decl. at ¶¶ 9-13. Without any evidence of willfulness or bad intent on the part of Defendants, Plaintiff has failed to carry his heavy burden of persuasion as to his willful infringement claim.

In sum, Plaintiff has failed to carry the heavy burden of establishing that he is likely to succeed on the merits.

> ii. **There Is Adequate Remedy At Law, And Plaintiff Has Not And Will Not Suffer Irreparable Harm in the Absence of the Preliminary Injunction.**

For the same reasons stated in Section II.b above, Plaintiff has failed to establish any *irreparable* harm caused by Defendants, and adequate remedy at law is readily available in the form of monetary damages and/or royalties. *See Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.")(emphasis added).

Thus, this factor favors dissolving the preliminary injunction.

> iii. **The Balance Of Hardship Tips In Defendants' Favor.**

The preliminary injunction including the temporary asset restraint has caused substantial financial loss and severe operational disruptions to Defendants' businesses. *See* Fu Decl. at ¶¶ 26-33. By comparison, and for reasons stated above, Plaintiff at most is losing royalty revenue that can be compensated by monetary damages even if he were to ultimately prevail.

Due to Plaintiff's extremely weak of showing of his likelihood of success on the merits and any purported irreparable harm, this factor favors dissolving the preliminary injunction.

> iv. **The Preliminary Injunction Is Not In The Public's Interest.**

Given the weakness of Plaintiff's position on the preceding factors, it is not in the public's interest to grant Plaintiff a monopoly at this time, especially when Plaintiff has shown no legitimate business operations or competing product offerings. Rather, it is in the public interest to dissolve the preliminary injunction and allow Defendants to resume their operations and product offerings.

### III. This Court Should Raise The Bond Required From Plaintiff To Secure The Preliminary Injunction Pending Final Adjudication Of This Opposition.

In view of the substantial harm to Defendants and other co-defendants who have raised meritorious defenses, this Court should raise the surety bond to $250,000. *See Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'ns*, No. 20 C 4806, 2024 U.S. Dist. LEXIS 117034 (N.D. Ill. July 2, 2024)(ordering "Schedule A" plaintiff to pay to certain defendants the entire $250,000 surety bond).

### IV. CONCLUSION

For the forgoing reasons, Defendants respectfully request the preliminary injunction be dissolved and their requests herein be supported.

Respectfully Submitted,

Dated: September 18, 2024

*/s/ Zheng Gong*
Zheng Gong
Illinois Bar No. 6323959
ShinyRise PLLC
1 East Erie St., Suite 525-5203
Chicago, IL 60611
Email: zheng.gong@shinyrise.com
Phone: 202-818-8086
*Attorney for Defendants*

15

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing paper was filed electronically with the Clerk of the Court using the CM/ECF system on September 18, 2024, which will send notification of such filing to all counsel of record.

Date: September 18, 2024

                                                                     */s/ Zheng Gong*
                                                                       Zheng Gong